J-S04006-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CURTIS A. SHEERER, | |
| Appellant | No. 1802 WDA 2014 |

Appeal from the PCRA Order October 8, 2014
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-00002942-2012

BEFORE:  BOWES, OLSON, and STRASSBURGER,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED FEBRUARY 16, 2016**

Curtis A. Sheerer appeals *pro se* from the October 8, 2014 order denying his first timely PCRA petition after counsel was permitted to withdraw pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*) ("**Turner/Finley**").  We affirm.

A jury found Appellant guilty of aggravated assault on July 23, 2013.  Appellant, despite notice, failed to appear for sentencing.  The court sentenced Appellant in his absence on September 17, 2013.  It imposed a sentence of seven and one-half to fifteen years incarceration.  Appellant did not file an appeal.  The underlying facts of this matter are as follows.

_____
* Retired Senior Judge assigned to the Superior Court.

The victim, James McCoy, was at the Lakeside Tavern, in Erie County, with Kim Schmidt on the evening of June 13, 2012. Mr. McCoy and Ms. Schmidt were friends and, according to Mr. McCoy, dating at that time. Appellant was previously romantically involved with Ms. Schmidt. Mr. McCoy also had dated a woman named Tabitha Bromley, who at the time of both the incident and trial in this matter was dating Appellant. Ms. Bromley arrived at the bar and began to order drinks for Mr. McCoy. According to Mr. McCoy, Ms. Bromley was attempting to rekindle their prior relationship. Ms. Schmidt telephoned Appellant and told him to come pick up his girlfriend, Ms. Bromley. Appellant arrived, displeased with Mr. McCoy and Ms. Bromley. Appellant chased Mr. McCoy around the parking lot of the bar before Mr. McCoy left in his vehicle. Ms. Bromley had also entered Mr. McCoy's car and left the bar with him. Appellant then began to chase Mr. McCoy and Ms. Bromley in his vehicle. Mr. McCoy pulled into a car dealership and turned his car lights off and Appellant passed him.

Mr. McCoy and Appellant did not have additional contact with one another that night. The next day, Ms. Bromley called Mr. McCoy and invited him to come to the home of Jennifer Bailey, with whom Ms. Bromley was staying at the time. Mr. McCoy arrived at Ms. Bailey's home around 6:00 p.m. Ms. Bromley and her twenty-year old daughter, Samantha, were present. Ms. Bailey was inside preparing dinner and another person named Richard Fahey was also inside.

While Mr. McCoy and Ms. Bromley were outside smoking cigarettes, and Samantha Bromley was also present, Appellant came around the corner of the home and punched Mr. McCoy on the left side of his face, causing four fractures and the loss of three teeth. Specifically, Mr. McCoy suffered two acute sinus fractures and two orbital fractures. The blow to Mr. McCoy's face caused him to stumble toward the house. Although Mr. McCoy did not see who struck him, when he turned around he saw Appellant. Appellant then ran around the house. Ms. Bailey did not witness the attack, but she did see a person she believed was Appellant, running away from her home. She provided a written statement to police identifying Appellant as the person who fled from her home, but acknowledged at trial that she did not see his face.

Mr. McCoy called 911 and Officer David Pernice arrived to investigate. Mr. McCoy identified Appellant as his attacker. Ms. Bromley also informed Officer Pernice that Appellant had punched Mr. McCoy. She then transported Appellant to the hospital. At trial, however, Ms. Bromley, who as mentioned, was dating Appellant, declined to identify him as the assailant.[1] Similarly, Samantha Bromley testified that Appellant was walking down the side of the Bailey house after Mr. McCoy was struck in the face. However, she had

_____

[1] The Commonwealth also introduced Facebook posts from Ms. Bromley to Mr. McCoy, in which Ms. Bromley indicated that Appellant hit Mr. McCoy on the day in question.

earlier provided a written statement to police indicating that Appellant punched Mr. McCoy.

Ms. Schmidt testified that she received two text messages from Appellant on June 14, 2012. The first message arrived at 6:39 p.m. and read, "I just punched James in the mouth." N.T., 7/23/13, at 49. Ms. Schmidt received a second message from Appellant at 6:45 p.m., which stated, "I just dropped him in one hit." *Id*. When questioned by trial counsel as to whether she sent the messages herself, she denied it. Based on this evidence, the jury found Appellant guilty of aggravated assault. The court imposed the aforementioned sentence on September 17, 2013.

As noted, Appellant did not file a direct appeal.[2] However, on June 20, 2014, Appellant filed his underlying *pro se* PCRA petition. The PCRA court appointed counsel, who filed a ***Turner/Finley*** no-merit letter and petition to withdraw. The PCRA court granted counsel's petition to withdraw and provided Rule 907 notice of its intent to dismiss Appellant's petition. Appellant filed a response and the PCRA court dismissed his petition. Appellant filed a timely notice of appeal and the PCRA court directed Appellant to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied by filing a boilerplate concise

---

[2] PCRA counsel addressed this issue in his ***Turner/Finley*** no-merit letter. Appellant does not contest that he was denied his direct appeal rights in this matter.

statement that parroted the PCRA statute but did not raise any specific issues. The PCRA court issued an order indicating that the concise statement's lack of specificity precluded it from authoring a decision addressing Appellant's claims. The matter is now ready for our consideration. Appellant presents three issues for our review.

A. Was Appellant denied effective assistance of counsel, whereby, his trial attorney offered no defense when there was [a] defense available?

B. Should the lower court have given Appellant an evidentiary hearing on "newly discovered evidence"?

C. Was Appellant denied access to the court by not giving him (under court order of this Honorable Court, see attached Exhibit "B", whereby he requested verious [sic] documents, police reports, witnesses statements and testimony transcripts?

Appellant's brief at 2.

In reviewing a PCRA appeal, we consider the record "in the light most favorable to the prevailing party at the PCRA level." **Commonwealth v. Henkel**, 90 A.3d 16, 20 (Pa.Super. 2014) (*en banc*). In performing this review, we consider the evidence of record and the factual findings of the PCRA court. **Id**. We afford "great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record." **Id.** Accordingly, so long as a PCRA court's ruling is free of legal error and is supported by record evidence, we will not disturb its

decision. *Id*. Where the issue presents a question of law, "our standard of review is *de novo* and our scope of review is plenary." *Id.*

Preliminarily, we agree with the PCRA court's conclusion that Appellant's issues in his Rule 1925(b) statement were boilerplate and that, because they lacked specificity, it could not address his claims. Appellant's Rule 1925(b) concise statement set forth the following issues verbatim:

A. Ineffictive [sic] assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjuication [sic] of guilt or innocence could have taken place.

B. The inavailability [sic] at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduce[d].

C. The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the records, and

D. A violation of the Constitution of this Commonwealth and the Constitution of the United States which, in the circumstances of the particular cause [sic], so undermined the truth-determining process that no relable [sic] adjudocation [sic] of guilt or innocence could have taken place.

Appellant's Pa.R.A.P. 1925(b) concise statement, 11/10/14. These issues merely repeated subsections of the PCRA statute. As Appellant failed to adequately preserve his first two issues in his Rule 1925(b) statement, they are waived; further, they are without merit. Insofar as Appellant's third issue leveled on appeal contends that he was not provided the necessary transcripts to effectuate his appeal, we find that he is not entitled to relief.

- 6 -

Appellant argues that he was not supplied with his preliminary hearing or trial transcripts. First, we note that Appellant's claims do not relate to his preliminary hearing; moreover, Appellant could not establish actual prejudice relative to issues that transpired at his preliminary hearing. *See Commonwealth v. Stultz*, 114 A.3d 865 (Pa.Super. 2015). To the extent Appellant claims that his trial transcripts were not provided, we acknowledge that both the PCRA court and this Court entered orders directing that Appellant be provided with his trial transcripts.

The Commonwealth posits in its brief that it provided a copy of its file to Appellant without the transcript and avers that original PCRA counsel turned over his file to Appellant. Even assuming Appellant did not receive his transcripts from either the PCRA court or PCRA counsel, he does not argue how this omission prejudiced him in his ability to address his merits based arguments.

Appellant's first issue on appeal relates to trial counsel not presenting certain witnesses, permitting inculpatory text messages he sent that were purportedly not turned over in discovery into evidence, and that another person admitted to committing the assault. The only portion of Appellant's argument that relates to evidence that would have been part of the transcript pertains to the text messages. There is no dispute by the parties or in the record regarding those communications. Thus, the alleged lack of a trial transcript could not have prejudiced Appellant's ability to address his

issue. Appellant's contention is that the messages were not contained in discovery. PCRA counsel below inquired into this matter and learned from trial counsel that these messages were provided in discovery. Further, additional evidence demonstrated that Appellant struck the victim in this matter.

Similarly, the absence of a transcript would have little impact on Appellant's ability to litigate his extra-record ineffectiveness claim relative to counsel's failure to present certain witnesses. "To plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." *Commonwealth v. Stewart*, 84 A.3d 701, 706 (Pa.Super. 2013) (*en banc*). The failure to meet any of these aspects of the ineffectiveness test results in the claim failing. *Id*.

A claim has arguable merit where the factual predicate is accurate and "could establish cause for relief." *Id*. at 707. A determination as to whether the facts asserted present a claim of arguable merit is a legal one. *Id*. In considering whether counsel acted reasonably, we do not use a hindsight analysis; rather, an attorney's decision is considered reasonable if it effectuated his client's interests. *Id*. Only where "no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success[,]" will counsel's

strategy be considered unreasonable. *Id*. Finally, actual prejudice exists if "there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id*. It is presumed that counsel renders effective representation.

Where the issue involves an attorney's failure to call a witness, the petitioner must prove: (i) the witness existed; (ii) the witness was available to testify; (iii) counsel knew of, or should have known of, the existence of the witness; (iv) the witness was willing to testify; and (v) the absence of the testimony was so prejudicial as to have denied the defendant a fair trial. *Commonwealth v. Chmiel*, 30 A.3d 1111, 1143 (Pa. 2011); *Commonwealth v. Cox*, 983 A.2d 666, 692 (Pa. 2009).

In his brief, Appellant specifically refers to Johnathan Schwab and Forest Vannucci. These men, according to Appellant, would offer testimony that another person, Bobby McClelland, admitted to them to striking the victim.[3] This evidence, if introduced for its truth, would be inadmissible hearsay.[4] Thus, the evidence could only be introduced as possible

---

[3] There was testimony at trial that Mr. McClelland, eighteen years old at the time of the incident, was present in the area. However, no one identified him as the attacker. Mr. McClelland is now deceased.

[4] It is unclear whether Mr. McClelland was deceased at the time of trial, thereby implicating the statement against interest exception to the hearsay rule. However, such a statement must be supported by corroborating circumstances that clearly indicate trustworthiness. *See* Pa.R.E. 804(b)(3).

impeachment evidence. Appellant does not develop any argument in this regard and every witness to the incident either identified Appellant as the assailant at one time, or acknowledged that he fled the area after the assault.

As to unnamed other witnesses whom Appellant claims would have testified that the victim had a disreputable character and angered other people who would have had a motive to assault the victim, his failure to identify these witnesses is fatal. Furthermore, Appellant has neglected to proffer any admissible testimony that these alleged witnesses could have provided.

Appellant's second issue leveled on appeal also does not require the trial transcript to materially advance his position. That claim argues that he learned of newly-discovered evidence in the nature of information from Johnathan Schwab that another individual struck the victim and that Mr. Schwab's mother, Kim Schmidt, lied at trial about the text messages.[5] The initial portion of Appellant's claim is inconsistent with his first issue where he alleges counsel was ineffective for failing to present Mr. Schwab. Moreover, Appellant fails to indicate in any manner how this evidence could not have been ascertained prior to trial.

_____

[5] Appellant's theory is that Kim Schmidt, the mother of Johnathan Schwab, and Appellant's former girlfriend, kept Appellant's cell phone, and somehow knew of the attack and then texted herself from Appellant's phone.

This Court has explained in the PCRA context that a "petitioner must plead and prove by a preponderance of the evidence 'the unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.' 42 Pa.C.S. § 9543(a)(2)(vi)." *Commonwealth v. Foreman*, 55 A.3d 532, 537 (Pa.Super. 2012). In addition, this Court has, in *Commonwealth v. Padillas*, 997 A.2d 356 (Pa.Super. 2010), opined that a petitioner must show the evidence "(1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted." *Id*. at 363; *see also Commonwealth v. Walker*, 36 A.3d 1, 14 n.17 (Pa. 2011). Failure to satisfy any of these aspects of the test results in the claim failing. *Padillas*, *supra* at 363.

Mr. Schwab's proffered testimony that another person admitted to committing the crime and that his mother stated that she lied at trial also would be hearsay if introduced for its truth. Further, after-discovered evidence claims generally cannot succeed if the evidence will be used solely for impeachment purposes. In sum, Appellant's first two issues are both waived and without merit and his final issue does not entitle him to relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  2/16/2016